In the Matter of the Estate of CHARLES W. LAGEMANN, Deceased.

Surrogate's Court, New York County, December 20, 1937.

*Frederick C. Bangs,* for the trustees.

*Edmund S. Bergen,* special guardian.

DELEHANTY, S. An application is here made to modify the decree on accounting entered on July 19, 1937. An obvious clerical error requires modification of the decree so that the total of commissions allowed will be stated at $23,090.70 instead of at $15,393.80. The original decree correctly fixed the amount of commissions for each trustee, but computed the total as if there were only two rather than three acting trustees. The application is granted to the extent stated.

The moving party seeks separately on this application to have the court adopt a proposed revised decree submitted in behalf of the trustees containing text dealing with their acts in liquidating certain shares of stock and in retaining other shares of the same stock. By the decree entered in July the court limited its determination to a holding that in the absence of objection the transactions actually reported in the account stood approved. The language of the decree then submitted in behalf of the trustees sought to deal prospectively with the operation of the trust, sought approval prospectively of the continued handling of the shares which remained in the trust and sought prospectively to establish an exemption from liability for such retention by the trustees. The court declined to make the decree in the language requested, and there is now presented by this motion for reargument the problem whether the decree actually entered should be corrected to conform to the wishes of the trustees.

Before dealing with the text of the decree as entered and of the decree proposed in behalf of the trustees, the court deems it appropriate to comment on a situation which is not directly involved in the question whether the decree should be revised but is of vital importance in assuring a complete development of the merits of the problem. The trustees heretofore retained counsel in connection with the administration of the affairs of the trust. Counsel so retained are attorneys for the estate. In the general character of their work they are engaged in the interest of the trust as a whole. An accounting proceeding is one in *rem* in a certain sense since it may furnish only an opportunity for settlement of controversies arising among claimants to estate assets. The impersonal relationship which a fiduciary holds in such a situation is wholly changed when the issue becomes one between the beneficiaries, on the one hand, and the fiduciary, acting in his personal interest, on the other. When such controversies arise it may develop that the attorney for the estate is asked to advance or to defend a legal

position of the fiduciary which is taken essentially in the fiduciary's own personal, private interest. That seems to the court to be the situation here. When such a situation arises the question is immediately presented whether or not the fiduciary may pursue his personal interests without assuming that the interests of his *cestuis* are adequately protected. " Many forms of conduct permissible in a workaday world for those acting at arm's length, are forbidden to those bound by fiduciary ties. A trustee is held to something stricter than the morals of the market place. Not honesty alone, but the punctilio of an honor the most sensitive, is then the standard of behavior. As to this there has developed a tradition that is unbending and inveterate. Uncompromising rigidity has been the attitude of courts of equity when petitioned to undermine the rule of undivided loyalty by the ' disintegrating erosion ' of particular exceptions. (*Wendt* v. *Fischer*, 243 N. Y. 439, 444.) Only thus has the level of conduct for fiduciaries been kept at a level higher than that trodden by the crowd." (*Meinhard* v. *Salmon*, 249 N. Y. 458, 464.) The sixth canon of the American Bar Association's Canons of Professional Ethics has been accepted generally by the bar as an appropriate regulation of the conduct of attorneys in such a situation. Of course, a lay or corporate trustee is not bound by that canon. But a fiduciary is subject to direction of the court. (Surr. Ct. Act, § 40, subd. 2.) Having thus pointed out the applicable principles, the court assumes that in the appellate court there will be presented by independent and competent counsel such matters in support of the decree of the court as counsel interested in the *cestuis* only may determine to be appropriate, and that no need exists for express direction to the trustees to this effect. The intermediate appellate court is the court which has general jurisdiction over lawyers, and has full authority to see to it that no appeal is argued in that court without representation of the necessary parties. The limited field of action avai able to the special guardian is not sufficient here to assure full hearing. This court's attention has been called to appeals taken by fiduciaries on decrees affecting only their own commissions wherein the attorney for the " estate " has applied to the appellate court for reversal or modification of the decree in favor of the personal interests of the fiduciary, leaving the beneficiaries of the estate wholly unrepresented. A typical instance is *Matter of Jesup* (161 Misc. 618; affd., 251 App. Div. 813).

At the time of his death in 1930 deceased held a controlling share interest in a holding corporation. The executors of deceased delivered this controlling interest to the trustees at a total valuation of about $600,000. Two of the trustees were also shareholders

in the same corporation. They constituted the majority of the directors of the corporation. By stockholder vote in December, 1936, the capital of the corporation was reduced by one-half. At that time the shares had a book value of $101.54 each. Equality of treatment of the shareholders in the capital distribution which followed the capital reduction would have permitted the redemption of one-half of the shares held by each shareholder. The trustees on such a plan would have had paid to them approximately $390,000. Actually the individual stockholders withdrew in cash or securities the value of all of their shares. The trust received only $98,000. The trust continued to be a shareholder in the corporation. Its original percentage of stock ownership was 52.54 per cent. When the redemption of shares was completed its share ownership had increased to 91.61 per cent. If ratable distribution had been made to the trustees they would have had approximately $390,000 which, under the will, they would have been obliged to invest in legal securities. The ninth article of the will gives the trustees broad powers with respect to the *retention* of the *testator's* investments. It provides in respect of such investments " that no liability shall be incurred on behalf of my estate *beyond the amount then invested.*" Article eighth of the will provides: " I direct that *all investments made by my said trustees* shall be in such securities as are authorized by the laws of the State of New York regulating investment of trustees." The trustees contend that it is an advantage to the trust to have a greater amount of the corporate stock since thereby they may, through the corporate form and by the employment of investment counsel to advise the corporation, make a greater profit than they could make if limited to investments in legals. They assert that the percentage increase in share holding in the corporation works no change in the investment of the deceased. They say that the value behind the shares of stock on hand, though such shares now represent 91.61 per cent of the total, is the same value which was theretofore behind the shares when they represented only 52.54 per cent of the value.

It is the view of the court that the matter cannot be dealt with on so simple a basis. The testator's investments were in a corporation in which were other interests whose combined resources or whose combined efforts for individual benefit might constitute a far greater assurance of safety of the investment of each one of the original stockholders than is now supplied by the corporate setup resulting from the acts of the trustees. The individual trustees have taken out their investment and no longer have that personal interest in the business and in the corporate affairs which may have been of controlling importance to deceased in making

his grant of power to the trustees to retain his investment in these shares. Whether a corporation from whose treasury there had been taken so large a quantity of cash and so large a quantity of marketable securities is in a practical business sense the same corporation as that in which the deceased had an investment which the trustees were authorized to retain may become a real question. At least the court cannot say that the facts if developed would not permit a finding that the investment of the deceased had " been substantially changed in form and value." (*Industrial & General Trust, Ltd.*, v. *Tod*, 180 N. Y. 215, 231.) Neither can the court say whether, if the facts which furnished the background for the execution of this will were established, the power to retain investments granted to the trustees would extend to the situation now created. Whether this will means that the testator gave to his trustees the power to retain shares in a corporation from which his trustees themselves had retired and from which they had withdrawn their own investment may become a matter of serious controversy. The court will not attempt by decree to foreclose that controversy.

The decree originally presented sought to have the surrogate state that he had " determined that the acts of the said trustees with reference to the capital stock of Uplands Corporation were within the power, authority and discretion given them under the provisions of the last will and testament, and that they have the power and authority to retain and continue to hold in the trust estates shares of the capital stock of Uplands Corporation." The requested decree further asked the court to adjudge " that the Trustees of the trusts under the Will of said decedent had the power, authority and discretion to deposit for redemption and cancellation 969 shares of the capital stock of Uplands Corporation and to receive in lieu thereof underlying assets of the Corporation in proportion to the stock holdings so deposited for redemption and cancellation, and that the acts of said Trustees in connection therewith be and they hereby are approved," and that the " Trustees under the terms of the Will of said decedent have the authority, power and right to continue to hold as a part of the trust estates, as they now do, 6,662 shares of the capital stock of Uplands Corporation."

The petition of the trustees in the accounting proceeding states: " That your petitioners are desirous of rendering to said Surrogate's Court an account of their proceedings and also of submitting to the Court for approval the facts and acts of your petitioners set out in Schedule ' L ' of the account filed herewith relating to the liquidation of 969 shares of the stock of Uplands Corporation, a

personal holding corporation organized by the above named decedent, and their *present* holding of 6,662 shares of the stock of said corporation, and therefore pray that their proceedings with reference to said stock of Uplands Corporation, as set out in said Schedule ' L,' be approved and that their account be judicially settled, and that all the persons above mentioned and all necessary and proper persons be cited to show cause why such approval should not be given and why such settlement should not be had." (Italics supplied.)

The decree which has been entered furnishes to the trustees all the assurances to which they are presently entitled. It was entered on the basis of the facts as they stood at the closing date of the accounting period. This is in strict accord with the rule established in *Matter of Roche* (259 N. Y. 458). The application to modify the decree is granted only in respect of the error in mathematics.

Submit order accordingly.